The Honorable James C. Scott State Senator 321 State Highway 15, North Warren, Arkansas 71671
Dear Senator Scott:
This is in response to your request for an opinion on three questions concerning revenue received from the U.S. Government in connection with the federal Felsenthal Wildlife Refuge. Specifically, you note that the counties in south Arkansas in which a portion of the Felsenthal Wildlife Refuge is located receive from the U.S. government payments in lieu of taxes. The purpose of such payments is to replace ad valorem property taxes which are lost as a result of the lands being included in the federal refuge. You note that the payments are made directly to the counties. You pose the following three questions in this regard:
 (1) Is the county obligated or required to share such funds with a school district in the county which includes a portion of the lands in the refuge?
 (2) If the county is required to share the funds with such school district, how is the proportion of the funds to be allocated to the district determined?
 (3) If the county is not now required or obligated to share the in lieu of tax payments with a school district in which a part of the refuge is located, would a state law requiring the county to do so be valid?
It is my opinion that the answer to your first question is "yes." The question is controlled by federal law. Subsection (c)(5)(A) of Title 16, Section 715s of the United States Code provides as follows:
 Each county which receives payments under paragraphs (1) and (2) with respect to any fee area or reserve area shall distribute, under guidelines established by the Secretary, such payments on a proportional basis to those units of local government (including, but not limited to, school districts and the county itself in appropriate cases) which have incurred the loss or reduction of real property tax revenues by reason of the existence of such areas.
See also 50 C.F.R. § 34.5(c).
In response to your second question, 16 U.S.C. § 715s provides that such payments are to be distributed "on a proportional basis." The Secretary of the Interior, under the authority of16 U.S.C. § 715s, has promulgated rules governing the distribution of these funds. These rules appear at 50 C.F.R. § 34.5 (c), a copy of which is enclosed. In pertinent part, the regulations provide for the distribution of the funds to other local government units "in the same proportion as its current tax loss bears to the whole tax loss." The regulation offers at least two specific options for determining this distribution. One is to determine the distribution "from representative tax bills for the area." Under this formula, the funds are distributed using a "Typical Tax Bill for the Area." If the county's portion of the total typical tax bill is eighty percent and the school district's portion is twenty percent, the county would keep eighty percent of the federal payments and pass through twenty percent to the school district. Another formula set out in the regulation for distribution of the funds is to evaluate the taxation of a "Typical Acre." If the county levies 80 mills on each $100 of assessed value, and the school district levies 20 mills, again, the county would keep eighty percent of the federal payments and pass twenty percent on to the school district. The regulation also provides that the distribution may be made "by other suitable methods to achieve an equitable result." It must be noted, however, that the funds must be distributed "on a proportional basis." See again 16 U.S.C. § 715s. A copy of these regulation is enclosed for the review of county officials.
In light of the responses above, and answer to your third question is unnecessary.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh